The case for argument is 20-1806, Baxter Corporation Englewood v. Becton, Dickinson and Company. Mr. Summerfield, whenever you're ready. Thank you, Your Honor. Good morning and may it please the Court. George Summerfield on behalf of Appellant Baxter. Before getting into the specific issues on appeal, it is now undisputed that the Fioravanti reference does not anticipate any challenge claim because there is no teaching of the associatively stored limitation therein. As for the issues that are on appeal, to summarize... Mr. Summerfield? Yes, Your Honor. Judge Wallach, let me start with a little housekeeping question. Page 27 of the Joint Appendix in a Final Written Decision. The tab has a complete sentence. It says, Patent owner does not contest that Fioravanti discloses limitations and we... and then there's a blank. I mean a missing word. The evidence showing their disclosure persuasive. I'm assuming that word is fined, but I want to make sure that everybody agrees with that. Your Honor, I think that's probably the right reading. Okay. Thank you. Go ahead. Thank you, Your Honor. I'd like to proceed directly to Ground Two from below. The key to Ground Two obviousness is that Fioravanti's Figure 10, which appears at Appendix Page 2472, purportedly evidences at least a temporary association between weight and image data. However, merely seeing two things simultaneously does not evidence associative storage of those things. Imagine, for example, having multiple windows open up at the same time on a computer screen, ESPN and Doppler radar, for instance. Merely seeing the content of both simultaneously does not evidence an associative storage between the two. To salvage the issue regarding what Figure 10 teaches, BD cites the evidence that displayed weight data is stored in buffer memory, a point that it did not actually make in its petitions. Mr. Summerfield, this is Judge Wallach again. Yes, Your Honor. I'm going to ask you a few questions then. On Page 50 of the Joint Appendix, you argue that the patent claims canceled in reissuer void ab initio, as if the patentee was in the same situation as he would have been in his original application for a patent that had been rejected. On Page 19 of the Gray Brief, you say, if a patentee loses the right to exclude others, it loses the grant. Logically, according to the plain language of Section 10T2E2, once the Alexander grant was lost, prior art status was lost as well. My question for you is, would a person having ordinary skill in the art be required to forget the information they learned from an issued patent? No, Your Honor. Sorry, Your Honor. After its claims were canceled in an IPR? And if so, how do you get them to forget it? No, Your Honor, but that's really not the test. First of all, we're talking about a hypothetical person of ordinary skill in the art who is charged with knowing what the prior art teaches. If something is taken out of the prior art, that is no longer part of what that hypothetical person would know. And we have other examples of that in the statute. For example, prior invention. Prior invention is prior art unless it's abandoned, suppressed, or concealed. Presumably, the abandonment occurs sometime after the prior invention. So there's an example of something that used to be in the prior art but is no longer. And it's the same issue. That person of hypothetical skill would no longer be charged with knowing whatever that was that was previously invented upon the abandonment of that invention. So the hypothetical person has no memory. That would be one way of looking at it. Yes, Your Honor. Okay. Let me ask you this. On page 5 of the Gray Brief, you ran into one of my pet peeves. You say that Baxter's claim that Figure 10 was cited in its petitions in support of the argument that Fioravanti rendered the associative storage limitation obvious is just false. The two quoted citations for this proposition provided by BDC to its claim chart for Claim 19 of the 273 patent and the purported teaching in Figure 10 of the metadata limitation of that claim.  No, Your Honor, because Claim 19 adds to the requirements of Claim 1 that metadata be associated with a dose or dose information. Claim 1 separately requires the associative storage of weight and image data. Those are two different things. Claim 19 adds this incremental requirement, and that was why BD was citing Figure 10 below. That citation has nothing to do with the associatively stored limitation of Claim 1. And the same is true for the citation of that figure in the 693 petition having to do with Claim 2. Again, nothing to do with the associatively stored limitation. Okay. In that genre, going the other way, on page 58 of the Blue Brief, I'm sorry, on page 57 on Note 6, on page 58 you say, Dr. Young testified during deposition that his diagnosis was faulty. It was based on a totality of his understanding of pharmacy practice in general, most of which is not time-specific and technology-wise, quote, internal quote, might be off on what could have been available at a certain time and date. At Note 6 on page 57 of the Red Brief, BDC asserts that you took Dr. Young's testimony out of context because Dr. Young was counting for the difference between 2008 and 2012, which have no bearing on the validity of the challenge claims, according to them. I looked at that, and it sure looked like you did take it out of context. Tell me why you didn't. Well, I think, Your Honor, if it's the testimony I have in mind, he was talking about what existed basically up through the present. And he was not in a position to make a distinction as to what existed in 2008, 2012, and currently. And that was our point. Go ahead. Thank you, Your Honor. The Board exceeded its statutory authority in cobbling together its own challenge ground using previously unidentified Figure 10 as the centerpiece. In actuality, what occurred below is, even though BD did not cite Figure 10 for the associatively stored limitation, the Board relied upon that figure to plug an obvious hole in BD's obviousness challenge. Pursuant to Section 312A3, a petition may only be considered to the extent it identifies the grounds on which the challenge to each claim is based and identifies the evidence that supports the grounds for the challenge to each claim. That is not what happened here. BD's omission of Figure 10 with regard to the associatively stored limitation prevents the Board from relying upon that same figure as purportedly teaching or rendering obvious that limitation. That the Board, in fact, relied on that figure, nonetheless, is violative of 312A3. Well, are you making a challenge that you didn't have an—just that they shouldn't have relied on it, or that you didn't have an opportunity—you didn't know about it and you didn't have an adequate opportunity, therefore, to respond to it? The former Judge Prost—in fact, 312A3 isn't a function of notice or anything else. It's very clear on its face that an IPR, the meets and bounds of an inter partes review is defined by what's in the petition, irrespective of what notice the patent owner may ultimately have and what arguments it may be afforded an opportunity to respond to. Well, so be—explain to—I mean, the Figure 10 does appear in Becton's petition and also in Dr. Young's declaration, right? You're saying they appear, but they're making a different argument later on than they did initially with regard to that figure? Well, two points, Your Honor. First of all, they discuss Figure 10 in the background. That's very clear. And then secondly, as I mentioned earlier, it's cited for different limitations with regard to Claim 19 in the 273 patent and Claim 2 in the 693 patent. This isn't sufficient to define as a challenge ground Figure 10 as teaching or rendering obvious the associatively stored limitation in Figure 1 of the—or in Claim 1 of the two patents. And if we think about what this would mean if the opposite were true, a party could literally copy the entirety of a patent in the background section and then say, there it all is, and we can therefore morph whatever is in the background section to fashion later challenge grounds as we see fit. And that can't be what's contemplated under 312A3. Separately, the Board improperly shifted the burden to Baxter to explain why Figure 10 does not show associative storage. BD doesn't contest that such a burden shift would be improper. Rather, it argues that the Board was merely pointing out Baxter's failure to rebut Fioravanti's teachings as set forth in the petitions. However, as BD did not actually cite to Figure 10 for the associatively stored limitation this argument does not have any merit. After everything, even BD does not contest the proposition that simultaneous appearance in Figure 10 says nothing about associative storage. Rather, BD reverts to its original position arguing without any evidentiary support that memory device 15 in Fioravanti may be modified to provide for associative storage and that this modification is not complex. Baxter, on the other hand, cites to its computer expert that such modification does indeed require additional programming and Fioravanti is silent on such additional programming. This lack of teaching in Fioravanti is especially problematic given that the hypothetical person of ordinary skill, as BD points out more than once, would have no computer expertise. Even assuming one without computer skills would know to reprogram memory device 15, such reprogramming, according to the Board, would only result in the storage of weights and images, quote, as data corresponding to the dose order. This does not satisfy the associatively stored limitation, i.e., that the weight and image data are themselves to be associatively stored in memory. This infirmity also applies to Grounds 3 and 4 because all the Board arrives at at the end of the day is storage in association with a dose identification in Eliuk and a task identifier in Alexander. And if it pleases the Court, I will reserve the remainder of my time for rebuttal. That's fine. Thank you. Mr. Saunders. Good morning. May it please the Court. Let me start with a quick roadmap because Baxter's raised at least seven issues on this appeal. The Board found obviousness based on three different grounds, so there are multiple paths to affirmance here. And as best I understand Baxter's position and as the structure of his reply brief indicates, Baxter's making one general argument, the claim construction argument. And then for the remaining arguments, if Alexander is prior art, you don't really need to address the APA and substantial evidence arguments relating to Fioravanti. Mr. Saunders. Yes. This is Judge Wallach. Let me ask you that same housekeeping question to which your friend agreed. That missing word is find, is it not? Yes, it is. Okay. Thanks. And conversely, if you affirm the Board's finding of obviousness over Fioravanti, then you wouldn't need to reach the Alexander combinations. It's hard to say which path is easier since we don't think there's merit to any of the arguments, but let me just start with the issue of claim construction because that is the one general argument. This issue is narrowed substantially. You know, Baxter had prevailed on the primary point of contention below, which was whether to read a temporal requirement into the claim. And its first argument on appeal that the Board rendered superfluous the what in the claim, the weight and image, I think has fallen by the wayside. Those terms were just outside of the term that was being construed. So the Board didn't repeat them in its construction. So the fight on appeal really focuses on the term associatively. And, you know, Baxter is saying that the weight and image must be stored in relationship to one another. But it's really not clear what you think the Board did wrong or how it would make any difference. You know, the argument that there's just garden variety storage is a straw man. And, you know, the Board did require a relationship here. The weight and image have to be stored in the memory such that the processor can match the data to the medication receptacle or relevant dose order. And if you look at the way the Board applied its construction, it's clear that it's finding a relationship through that link to the dose order, finding that the weight and image, and then for the combination with Alexander, it's looking at the job or task identifier there and saying it would be obvious to combine that, which is for images in Alexander, with the weight information as well from Fioravanti, so that they're stored in relation to each other by assigning them the same identifier. And it's really the same in ELIOC, which has the dose ID disclosure that can be associated with weight and image. Again, there's a relationship between the two as they are stored by assigning them that same identifier, which then serves the purpose of the patent because it allows the processor to match that information for when it needs to be reviewed later by the remote pharmacist. And under the BRI standard here and with associatively stored not defined in the way that requires any particular type of association, we think the Board's construction is well supported. And, you know, one other point of dispute, I think, that emerged more clearly in the reply brief was the issue of Claim 19 and the metadata disclosures. You know, as the Board has been saying since it initially adopted its construction, the metadata, I think the way we would say it is that dependent Claim 19 and that particular storage arrangement is really a species of the genus of associative storage that's claimed in Claim 1. And in fact, you know, Baxter on page 42 of its opening brief is citing these metadata passages, supporting its argument regarding the plain meaning of the claim. And below in its patent owner response is 571, 572 of the appendix. It's also relying on the same metadata passages. They were central to its argument about the temporal limitation. So what the Board found in the prior art is really that same arrangement of associating those two by assigning them something that is associating them with the same dose order is really exactly what you see laid out in the specification as an example of associative storage. Well, Mr. Saunders, I take your point. But your friend on the other side spent much of his time dealing with the issue of whether or not the argument on Figure 10 was preserved in the petition, et cetera. So do you want to address that briefly? Sure. So Figure 10, a few points. Figure 10 is one of only two figures cited in the introductory description. Something that I think may have gotten obscured here is the claim chart for associatively storage. This is page 313 of the appendix. Cites paragraphs 89 through 95 of Fioravanti. And those are the paragraphs describing what is shown in Figure 10, putting the syringe back on the scale to check the final weight and comparing it to the target weight. And then also, Figure 10 is included in the discussion of Claim 19. And we should have been clear on this in our brief we're talking about is this relates to this issue of Claim 19 really just being a species, one particular way to associatively store. And so citing it in connection with that dependent claim, we think, puts it in play for consideration on the independent claim. And so in addition to sort of what's in the petition on Figure 10, it's also important to look at the board's decision here. And it was only after multiple pages of citing and crediting Dr. Young's analysis. So this is page 33 through 36 of the board's opinion that it cited Figure 10 as further support. So I think the way that you see it laid out in the obviousness section, the heartland of the analysis is following exactly what is laid out in that declaration. And then Figure 10, which is cited in the petition and which they have had a chance to respond to, comes into that analysis as further support. So we don't think that that comes anywhere close to the type of new grounds that you see in cases where this court has found a problem, where you saw an entirely new reference being cited, or where there was just a fundamental change of the theory within that particular reference. You know, the other thing is that all of that falls by the wayside. As I said, there are multiple paths here. And so, you know, that really relates to the obviousness over Fioravanti alone. But we have the combination with Alexander and its job or task identifier, or the combination with Alexander and Eliuk and its dose ID that provide entirely another path to affirmance that I don't think even implicates the APA arguments. And, you know, there wasn't a lot of discussion. I'm happy to address it if the court wants to on Alexander's status as prior art. I think the thing I would just reinforce coming off some of the questions that Judge Wallach was asking was the use of the past tense in Section 102E2, and the fact that it's talking about the invention was described in a patent that was granted. And the reliance on Section 154A1 and the use of the grant there, we think, if anything, reinforces our argument. I mean, first, 154A1 is really talking about what the patent grants rather than the grant of the patent itself. But if anything, the use of the present tense grants when the provision is still, when the provision is still, contrasts with the historic fact that the patent had been granted. And then I won't, you know, belabor the other points we make in our brief in terms of Alexander Milburn and the history and the logic here. You know, there was a brief discussion of the qualifications of our experts. You know, I think the core point there is we have an undisputed definition of APOSA. Dr. Young clearly meets that definition, has lots of experience selecting telepharmacy equipment for the Department of Defense. He was CEO of a telepharmacy software company. He clearly has the relevant expertise to give the perspective of a skilled artisan. And, you know, in terms of some of the implementation details, you know, those can't be found in the patent itself. And so I think Baxter is in a difficult position in terms of saying someone would have struggled with the implementation details when you don't see those disclosures in the patent. Mr. Saunders, this is a housekeeping question that you may not be in a position to answer, but there appears to be a related appeal to this case that's going to be likely argued in April, number 20-1937. Are you on? I don't even know if you're on that case. I am. Yeah, I'll be arguing that case. Okay. I just wanted to be clear that that appeal concerns a different patent, right? It does. It has become more... It concerns a different patent, different... Alexander overlaps is a prior reference. Right. So the one point of intersection that's emerged is in the APOE's brief in that appeal, Baxter then raised its argument about whether Alexander can be a 102E2 reference. Okay. So as through the course of the briefing, sort of one point of intersection did emerge. So however this panel decides that issue should then control how that one issue is resolved in the other appeal. Okay. Thank you. You know, I'm happy to answer any questions that the panel has. Otherwise, we would submit on the briefs. Hearing none, why don't we thank you, Mr. Saunders, and we'll turn back to Mr. Summerfield for his rebuttal. Thank you, Your Honor. And I want to start at appendix page 313 that Mr. Saunders cited. He said that there are citations to paragraphs that describe figure 10 from Fioravanti. There are 18 paragraphs cited there on page 313 with regard to the associatively stored memory. Precisely zero of them pertain to figure 10. Now I'd like to turn to Mr. Saunders' roadmap. Basically, what he said was if Fioravanti goes by the boards, it doesn't really matter because we still have the other references. However, without Fioravanti, there wasn't a motivation to store weight and image data in association. Very clearly below, the board found the motivation or the evidence of associative storage of weight and image data, at least temporarily, only in figure 10 of Fioravanti. That's it. Without that teaching, that linchpin is gone. With regard to claim construction, the problem with the board's claim construction below is it allowed weight and image data to be stored individually with a dose identifier. We can imagine a physical file where one places images and weights therein with no indication of what goes with what. That's the same thing here. If you're associating weight and image data only with a dose identifier, it is impossible to know what weight goes with what image. Finally, with regard to the person of ordinary skill in the art, it was incumbent upon BD if it wanted to rely upon computer teachings in the prior art to define the person of ordinary skill as having the expertise to understand those teachings. That it did not do that belies the notion that the same hypothetical person of ordinary skill in the art would know what to do with computer references to make the modifications the board suggested below to memory device 15. Well, am I misreading the record? I thought that the parties had agreed. They did, Your Honor. We agreed. And that definition was a person who had served several years of experience with remote pharmacy work supervision and verification, yada, yada, yada. Isn't Dr. Young's, aren't his credentials consistent with what you had agreed to? They are, Your Honor. The problem is, the infirmity is, he lacks the computer skills to understand computer teachings. Is he a person of skill in the art? He is a person of skill in the art of pharmacy. Yes, Your Honor. But the problem again is, if BD wanted to rely upon that person or a hypothetical skilled person to understand computer teachings, they should have defined the hypothetical person as having those skills. All right. I think I heard your bell go off. Yes, Your Honor. Thank you. We thank both sides and the case is submitted. Thank you very much, Your Honor.